[Opinion delivered May 17, 1880.]

---

### THOMAS P. MILLER v. McDANNELL & Co.

#### (Case No. 3518.)

1. AGENCY — SCOPE OF AUTHORITY.— The extent of the authority of the agent is to be measured by the nature of the business, the subject-matter of the contract and the varying circumstances of the transactions involved.   One who is agent for another in conducting and managing a business establishment which requires timely purchases of stock from time to time has authority to purchase goods for cash or on time, and, if bought on a credit, to contract in the name of his principal to pay for them at the place of delivery, or at any place which might be agreed on with the seller, which would not impose upon the principal conditions of such character that a reasonable mind would fairly infer that the principal would not authorize an agent in the usual course of business to bind him to perform.   Story on Agency, sec. 85.

2. VENUE — CONTRACT TO PAY AT A PARTICULAR PLACE.— Agreeing that goods bought should be paid for "over the counter" at the purchaser's place of business is a sufficient contract to make the money due therefor payable in the county in which the business is conducted.

APPEAL from Travis.   Tried below before the Hon. J. P. Richardson.

McDannell & Co. sued appellant by attachment November 11, 1874, in the district court of Travis county, on an account for liquors sold and delivered (much the greater part September 15 and 16, 1874) by McDannell & Co. to Miller. Miller pleaded in abatement that he did not reside in Travis county.   Plaintiffs, by amendment, alleged a promise to pay

in Travis county. February, 1876, the case was tried, and the issue as to the promise to pay in Travis county was submitted, with other issues, to the jury. A verdict was returned "that the defendant Miller did, by his agent, agree to pay in Travis county for the goods purchased of the plaintiff;" also finding for the amount sued for.

Judgment was rendered for plaintiffs for the amount and Miller appealed. The case was sent from supreme court to court of appeals, but returned because of a plea in reconvention claiming $2,000 damages for the wrongful suing out of the attachment.

The appellant relied alone on the insufficiency of the evidence to sustain the finding that the debt was payable in Travis county.

Appellant insisted that there was no testimony to sustain the finding of a promise to pay in Travis county.

The appellees insisted that there was evidence, and sufficient, to sustain the verdict that there was a promise to pay in Travis county.

The testimony on that subject was as follows:

Randle, for McDannell & Co., testified "that Miller had resided several years in Navasota, and has a family and carries on business there as a merchant. In 1874 he bought what is known as the 'Austin Saloon and Restaurant' on Congress avenue, in Austin, Travis county, Texas, and employed witness to manage the same. The business was done in Miller's name. Miller never resided in Travis county. About September 15, 1874, witness sent one John Hanson, the bar keeper employed in the saloon, to the business house of McDannell & Co. in Austin, to make some purchases of liquor for the saloon. Hanson returned with some samples, from which witness made a selection, and sent a negro man after the goods. The negro returned with what was ordered and they were placed in the saloon and sold there. Witness knows nothing of what occurred between McDannell and Hanson when he (Hanson) went to purchase the goods. There was no understanding with me to pay for the goods in Travis county. It was only an ordinary transaction, such

as occurs with merchants every day. Witness authorized Hanson simply to order the goods for the house, and knew of no special contract."

Page McDannell, one of the plaintiffs, testified: "About the date of the first item in the account attached to the petition, John Hanson, well known to witness, came to our store and told me he wanted to purchase some liquors for Miller's saloon, on Congress avenue, in Austin. I asked him who Miller was, and he (Hanson) said Mr. Randle represented him and that Miller lived down the country somewhere and would be here soon. I told him that I did not know Miller, but that I did know him, Hanson, and asked him (Hanson) how I was to be paid. He answered that he, Hanson, was going to tend the bar and would have the handling of all the money, and that he, Hanson, would pay me at the bar as he could along, paying $50 or $100 as he could spare it. That was satisfactory and I gave him the samples. I did not deliver the goods and do not know who received them. Afterwards Hanson paid me $100." . . "My understanding was that the money was to be paid at defendant's saloon, over the counter, in Austin, Travis county, Texas." . . "I never went to see Randle or any one else before selling the goods."

John Hanson testified: "I reside in Austin; know the plaintiff; never saw defendant. I was employed by Mr. Randle, in September, 1874, to keep bar. He told me he was agent for defendant Miller, and that the saloon belonged to Miller, defendant. About September, 15, 1874, the day the principal sale was made, Mr. Randle sent me to buy some liquors for the saloon. I went to the house of McDannell & Co. and told the plaintiff McDannell what I wanted. He asked me about the saloon, and I told him it belonged to a man living down the country, about Navasota, named Miller, and that Randle was attending to the business. He (McDannell) said he did not know Miller, and asked how he was to be paid. I told him (McDannell) I was going to tend the bar and would handle all the money and would pay him at the bar, or over the counter, as I

could spare it. McDannell said 'that would be all right.' I then went back and Mr. Randle examined the samples and sent for the goods, which were received. I did not tell Randle my conversation with McDannell. After this I frequently ordered goods. I made the payment of $100 at the saloon. I did not consider that I was making myself surety for Miller, the defendant. It was only an ordinary transaction, except as I have stated. The saloon is in Travis county."

*Jno. W. Robertson*, for appellant.

*Terrell & Walker*, for appellees.

WALKER, P. J.—The foregoing agreed statement of the facts and points of this case presents only the question whether there is any evidence to support the verdict of the jury, on the issue of fact whether the defendant, as petition avers, "contracted with plaintiffs that he would pay for said goods in the city of Austin, Travis county, Texas, and that by the terms of such contract, at and before the delivery to defendant of said goods, the said sums of money they sold for were and are payable in Travis county, Texas." Randle being the defendant's agent for conducting and managing for him a business establishment, which required timely purchases of stock from time to time, and the employment, probably, of servants, and certainly of a bar keeper; the defendant residing elsewhere and confiding the business to the exclusive control of his managing agent, it must be held it was clearly within the scope of Randle's authority to purchase the goods for cash, or on time; and if bought on credit, to contract in the name of his principal to pay for them at the place of delivery, or such place as would be consistent with the usual course of dealings in the market among merchants engaged in selling such goods. If there were no invariable custom respecting the place of payment, it would equally lie within the scope of the authority of the agent to contract to pay in behalf of the principal at any

place which might be agreed on with the seller, which was not unusual in such transactions, and which would, besides, not impose upon the principal conditions of such a character that a reasonable mind would fairly infer that the principal would not authorize an agent in the usual course of business to bind him to perform.   Such a standard of authority seems to be a fair application of the general doctrine that the agent may bind his principal within the scope of his authority; its extent is to be measured by the nature of the business, the subject-matter of the contract, the varying circumstances of the transactions involved, and "often by unexpected and unforeseen emergencies, in which event the authority will, as it were, expand beyond its ordinary limits, and justify even a deviation from its ordinary limitations and import."   "It is laid down as a general principle that it includes, unless the inference is expressly excluded by other circumstances, all the usual modes and means of accomplishing the objects of the agency."   Story on Agency, sec. 85.

The evidence supported the verdict, at least so far as related to Randle's authority to buy the goods on credit, and there is no evidence tending to show that the promise to pay at Austin, Texas, was out of the usual course of similar transactions in the Austin market.   If the contract thus made should have exceeded the agent's authority, it was susceptible of validation by the principal's ratification. Story on Agency, 239–260.   And as a general rule, where a ratification is established as to a part, it operates as a confirmation of the whole of that particular transaction of the agent.   Story on Agency, sec. 250.

"And not only will the principal be bound by a ratification of the unauthorized act of his agent, but if the latter has improperly substituted another agent under him, the ratification by the principal of the acts of the sub-agent will, to all intents and purposes, bind him in the same manner as if he had originally given to the agent power of substitution."   Id., sec. 249.   And so, though the contract were made by Hanson, should he be treated as the direct instrument in making the contract, and its validity should

turn, as appellant's counsel insists in his brief that it does, upon the authority of Hanson to bind the defendant, it would be equally the subject of ratification and consequent validation as though it had been made by Randle or by the principal himself. The evidence does not disclose whether any information was given to the defendant or not as to this transaction; it is not shown, either, that he was ignorant in relation to it. Men are supposed to be acquainted with accessible facts pertaining directly to their current business interests.

"It is by no means necessary," says Judge Story, "that there should be any positive or direct confirmation. And for this purpose the acts and conduct of the principal are construed liberally in favor of the agent. . . . Slight circumstances and small matters will sometimes suffice to raise the presumption of a ratification." Id., 253. The principal, at all events, knew that goods were bought for him, as the necessities of his business required, by his managing agent; that they were sold for his benefit; that he received the proceeds, and made no limitations, nor gave directions as to the terms of contracts of purchase, and on such a state of case it may well be concluded that he ratified the contracts, the advantages of which he so fully adopted, and concerning the terms of which he is not known to have made even an inquiry, nor to have expressed an objection until payment from him is demanded. "But," says Story, "whenever the acts of and conduct of the principal are inconsistent with any other supposition, the presumption of a ratification becomes, of course, far more violent and conclusive." Id., sec. 253.

The circumstances detailed by the witnesses concerning the business of the defendant at Austin — the mode of conducting it — his absence and residence in a distant place from Austin, and his apparent acquiescence in all that was done in his behalf, and his adoption of the purchases, sales, etc., and receipt of proceeds without question, afford evidence — circumstantial evidence — which may have satisfied the jury of his ratification of the contract, if indeed ratifica-

tion had been necessary. If so, the defendant would be bound by it, whether it had been made by his agent, or by Hanson. We think, however, that the contract of purchase was made by the agent, Randle, through Hanson, his mere messenger, sent to order the goods from the plaintiffs' business house. The relation of all parties was distinctly made known to the plaintiffs by Hanson, and the sale was made, as requested, of "liquors for Miller's saloon." The plaintiffs were informed who Miller was, where he resided, who was his agent, and that Hanson was "going to tend the bar." Randle adopted the purchase, and sent a negro for the goods and obtained them. Randle was not informed of the conversation between plaintiffs and Hanson; but he knew that the goods were ordered, and examined the samples which Hanson brought to him. Randle, of course, not paying for the goods at the time of purchase, knew that they were bought on some terms of credit, expressly understood, or arising by implication. If he saw proper not to inquire nor learn the facts, he must be deemed to have acquiesced in the terms of the sale, if those terms were not unusual nor out of the ordinary course of contracts of a similar nature, taking into consideration the fact that his principal lived abroad and relied alone upon him to make purchases, and had had no previous account or dealings with the plaintiffs. His acceptance of the goods, under the circumstances, was a proper circumstance from which the jury may have inferred the acceptance of the plaintiffs' terms to sell the goods payable at Austin.

We conclude that there is no error and that the judgment shall be affirmed.

AFFIRMED.